UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-20179-BLOOM/Louis

BERNARD B. NORRIS,

    Plaintiff,

v.

ACTING SECRETARY, UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
*Chad Wolf*,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Bernard B. Norris's Motion for Reconsideration of Order Granting Defendant's Motion to Dismiss ("Motion for Reconsideration"), ECF No. [21], and Plaintiff's Motion for Leave to File a Second Amended Complaint ("Motion to Amend"), ECF No. [22]. Defendant Chad Wolf, Acting Secretary, United States Department of Homeland Security, filed a Response to the Motion for Reconsideration, ECF No. [35], and Plaintiff filed a Reply, ECF No. [29]. Defendant also filed a Response to the Motion to Amend, ECF No. [26], to which Plaintiff did not reply.  The Court has carefully considered the parties' submissions, the record in the case, the applicable law and is otherwise fully advised. For the following reasons, Plaintiff's Motions are granted.

    **I.**    **BACKGROUND**

The Court assumes the readers' familiarity with the April 29, 2020 Order ("Dismissal Order"), ECF No. [20], granting Defendant's Motion to Dismiss Plaintiff's Amended Complaint, ECF No. [8], and does not repeat in detail the factual background or its legal analysis here.

On January 27, 2020, Plaintiff filed a First Amended Complaint, ECF No. [7], alleging Defendant retaliated against him for engaging in protected EEO activity in violation of 42 U.S.C. 2000e-16 (Count I), and Defendant failed to comply with a Final Judgment issued in a related case in the Southern District of Florida, Case No. 98-1704 (Count II). On March 24, 2020, Defendant moved to dismiss. *See* ECF No. [8]. At issue in the Dismissal Order was whether Plaintiff, a former federal employee, properly exhausted his administrative remedies prior to filing suit in this Court, conferring jurisdiction.[1] Accordingly, the Court briefly reviews the procedural history of this case and Plaintiff's preceding administrative appeal.

Plaintiff was employed at the Federal Protective Service ("FPS"). On July 23, 2019, Plaintiff received a notice of proposed removal from the Florida District Commander for FPS, and on September 9, 2019, Plaintiff was terminated. Plaintiff appealed the decision to terminate him to the Merit Systems Protection Board (the "MSPB Appeal") on September 13, 2019.

After filing the MSPB Appeal, the parties attended a pre-hearing teleconference with the MSPB Administrative Law Judge ("ALJ") on October 25, 2019, in order to discuss scheduling. The ALJ scheduled a hearing for January 7, 2020, and also issued an order suspending the processing of the MSPB Appeal for 30 days pursuant to 5 C.F.R section 1201.28(a). As noted in the Dismissal Order, an ALJ's ability to suspend a case is intended to address timing concerns due

---

[1] In its Motion to Dismiss Plaintiff's [First] Amended Complaint, ECF No. [8], Defendant recognized "[c]ourts in the Eleventh Circuit have found that the exhaustion of administrative remedies in a Title VII case functions as an administrative precondition to suit, rather than a jurisdictional prerequisite." *Id.* at 8 n. 2 (citations omitted). Therefore, Defendant moved to dismiss for failure to state a claim under Rule 12(b)(6), but not for lack of jurisdiction under Rule 12(b)(1). Yet, in the body of its argument, Defendant relied on *Rendon v. Potter*, Civil Action No. SA-06-cv-875-XR, 2007 WL 1452932 (W.D. Tex. May 15, 2007), noting the *Rendon* Court found the "failure of the MSPB to issue a judicially reviewable action within 120 days from the filing of Plaintiff's appeal provides no basis for this Court to exercise *jurisdiction*…". ECF No. [8] at 10 (emphasis added). Stated otherwise, despite operating under a 12(b)(6) legal standard, Defendant incorporated jurisdictional arguments. As explained below, to the extent the Court found it lacked jurisdiction to consider Plaintiff's case, that finding warrants reconsideration.

to the requirement under 5 C.F.R. section 1201.156 that MSPB appeals be adjudicated within 120 days. *See* ECF No. [20] at 10 (citing Practices and Procedures, 67 Fed. Reg. 3,811-01 (Jan. 28, 2002)).[2] The 120-day suspension period is also prescribed under 5 U.S.C. section 7702(e)(1)(B). The suspension allows the ALJ to "freeze" the 120-day statutory time period for up to 60 days to allow the parties to conduct discovery or negotiate a settlement. *See* ECF No. [20] at 11.

The processing of the MSPB appeal resumed on November 24, 2019. *See id.* at 8. On January 15, 2020, before the MSPB Appeal was resolved, Plaintiff filed his initial Complaint in this Court, ECF No. [1]. The MSPB Appeal continued in parallel. On January 24, 2020, Plaintiff withdrew his retaliation claim from the MSPB Appeal. Plaintiff filed his two-count Amended Complaint in this case three days later, on January 27, 2020. S*ee* First Amended Complaint, ECF No. [7].

Defendant thereafter filed its Motion to Dismiss, arguing Plaintiff failed to exhaust his administrative remedies before filing this action. The Defendant argued that the MSPB had yet to issue a judicially reviewable decision in the MSPB appeal and otherwise, the MSPB appeal had not been pending without a judicially reviewable decision for 120 days or longer. *See* ECF No. [8] at 7–12. Defendant further argued Plaintiff failed to state a claim under Rule 12(b)(6) with respect to both counts in the [First] Amended Complaint.

The Court agreed with Defendant's first argument and therefore did not address the second. Plaintiff now moves for reconsideration under Rules 59(e) and 60(b). Plaintiff also moves to amend the [First] Amended Complaint and attaches a proposed Second Amended Complaint for Damages, ECF No. [22-1]. The Second Amended Complaint maintains the Title VII discrimination claim (Count I), omits the claim for violation of the Final Judgment in Case No.

---

[2] The 120-day adjudication deadline is also set forth in 5 U.S.C. section 7702(a).

98-1704 (Count II), and replaces Count II with an appeal of his removal under the Civil Service Reform Act. *See* ECF No. [22] at 21–22.

 **II.    LEGAL STANDARD**

"Reconsideration is granted only in extraordinary circumstances and is committed to the sound discretion of the district judge." *Reiseck v. Universal Commc'ns of Miami, Inc*., 141 F. Supp. 3d 1295, 1301 (S.D. Fla. 2015) (internal quotation marks and citations omitted). "[T]here are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." *Burger King Corp. v. Ashland Equities, Inc*., 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) (alteration added; citations omitted). "A motion for reconsideration is not an opportunity for the moving party and their [sic] counsel to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995). It is "an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through — rightly or wrongly." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citations omitted; alterations adopted). Neither should a motion for consideration "be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). To permit otherwise would give rise to an endless string of motions from the losing party.

When a motion calls into question the correctness of a judgment the motion is "functionally [one] under Rule 59 . . . and the distinction between Rule 59 and Rule 60 is only a matter of timing." *City of Fort Lauderdale v. Scott*, No. 10-61122-CIV, 2011 WL 1085327, at *1 (S.D. Fla.

Mar. 21, 2011). "[W]hen the motion for reconsideration is filed within ten days of entry of the order Rule 59 governs, when the period of time is longer Rule 60(b) governs." *Id.*

### III.   DISCUSSION

Plaintiff relies on ground two, the availability of new "non-record evidence," *see* ECF No. [21] at 9; and ground three, the need to correct clear error or prevent manifest injustice.

### A.   Jurisdiction

#### i.   New Evidence

The Court declines to consider the new "non-record evidence" submitted by Plaintiff, undergirding ground two. This "evidence" is a summary of a Plaintiff's counsel's conversation with the ALJ preceding Plaintiff's withdrawal of his discrimination claim in the MSPB Appeal. *See* Unsworn Decl. of Christopher C. Sharp, ECF No. [21-2]. According to Plaintiff's counsel, the ALJ "suggested that if Plaintiff formally withdrew the Title VII claim from the MSPB [Appeal], it would expedite [the ALJ's] issuance of the Initial Decision on [Plaintiff's] remaining claims[.]" *Id.* at ¶ 5. Plaintiff's counsel also states the ALJ "acknowledged that Plaintiff was free to file his Title VII claims [because] 120 days had passed since the date the appeal was filed[.]" *Id.* at ¶ 4.

First, this evidence was available to Plaintiff at the time Plaintiff responded to Defendant's Motion to Dismiss. As noted, a reconsideration motion is not an opportunity for a litigant to present the Court with authority or arguments that could have been made during the first round of briefing. *See Burger King Corp.*, 181 F. Supp. at 1369. Second, even if the ALJ had recommended that Plaintiff's counsel withdraw the discrimination claim (an assertion Defendants contests, *see* ECF No. [25] at 10), courts may not provide litigants legal advice or render advisory opinions. *See Marmol v. Mount Sinai Hosp.*, No. 17-21752-Civ, 2017 WL 7796112, at *1 (S.D. Fla. June 19, 2017) (noting courts cannot provide legal advice even to *pro se* litigants). If Plaintiff has legal

authority in support of his position, he must present it in the form of case law, not summaries of a conversation with the ALJ presiding over his administrative case.

### ii. Clear Error or Manifest Injustice

In its Dismissal Order, the Court found 5 C.F.R. section 1201.28(a) operated to toll the 120-day waiting period under 5 U.S.C. section 7702(e)(1)(B). *See* ECF No. [20] at 11. Otherwise, the Court reasoned, the authority to suspend an administrative case set forth in the C.F.R. would be meaningless. *See id.* Reconsideration of the Court's holding in the Dismissal Order is appropriate given (1) the plain language of 7702(e)(1)(B); and (2) Supreme Court precedent and persuasive case law from the Fourth Circuit indicating that regulations like the one before the Court are "case-processing" rules that do not foreclose the Court's exercise of jurisdiction.

#### a. Plain language of the statute

First, the Court notes the plain language of the statute. Under 5 U.S.C. section 7702(e)(1)(b), "[n]otwithstanding any other provision of law, if at any time after . . . the 120th day following the filing of an appeal with the Board . . . there is no judicially reviewable action . . . an employee shall be entitled to file a civil action to the same extent and in the same manner as provided [under Title VII][.]" *Id.* When interpreting a statute, a court must begin with its plain language and assume Congress means what the statute says. *See Richards v. United States*, 369 U.S. 1, 9 (1962) ("[W]e must, of course, start with the assumption that the legislative purpose is expressed by the ordinary meaning of the words used."); *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1369, 1372 (S.D. Fla. 2009) ("When a statute is clear, a court may not look behind the statute's plain language or resort to rules of statutory construction to determine the legislative intent, as courts must assume that the Legislature knows the meaning of the words used in the

statute and to have expressed its intent through the use of the words." (citing *State, Dept. of Revenue v. Lockheed Martin Corp.*, 905 So.2d 1017, 1020 (Fla. 1st DCA 2005)).

Quite simply, the clause "[n]otwithstanding any other provision of law" in section 7702(e)(1)(b), forecloses the possibility that a separate regulation may alter 120-day waiting period, unless explicitly sanctioned by Congress. On its face, section 7702(e)(1)(b) permits Plaintiff to file a civil action 120 days after the filing of the MSPB appeal — here, any time after January 13, 2020.

As to 5 C.F.R. 1201.28(a), it does *not* explicitly state the 30-day case suspension period operates to 120-day waiting period under 5 U.S.C. section 7702(e)(1)(B). Even if it did, a regulation may not contravene the express language of the statute. *See United States v. Marte*, 356 F.3d 1336, 1341 (11th Cir. 2004) ("When a regulation implements a statute, the regulation must be construed in light of the statute, but where a regulation conflicts with a statute, the statute controls." (citations and footnote call number omitted)). Thus, to the extent that the Court interpreted 5 C.F.R. 1201.28(a) to permit the tolling of the 120-day waiting period in section 7702(e)(1)(B), this reading was in error, as it contravenes the clause permitting the filing of a civil action *notwithstanding any other provision of law*.

Plaintiff's citation to *Butler v. West*, 164 F.3d 634 (D.C. Cir. 1999) is persuasive. In *Butler*, the plaintiff, a U.S. Army employee, was terminated for insubordination and, like Plaintiff here, filed a "mixed-case" appeal with the MSPB. *See id.* at 636. Exactly 120 days later, in October 1994, the MSPB issued an initial opinion finding the plaintiff was insubordinate but that suspension, instead of termination, was the appropriate penalty. *See id.* The Army petitioned the MSPB to review its decision, the plaintiff filed a cross-petition, and while the cross-petitions were

7

pending, the plaintiff also filed a Title VII discrimination case in district court. *See id.* The MSPB issued a final decision in December 1994, affirming the ALJ's petition. *See id.*

In finding the plaintiff failed to exhaust her administrative remedies, the district court reasoned that because an *initial* decision was issued on, but not after, the 120th day following the filing of the appeal, the plaintiff was foreclosed from seeking judicial review under section 7702(e)(1)(B), which permits the filing of a civil action only if 120 days have passed *without* a judicially reviewable action. *see id.* at 637. To support its reasoning, the district court functionally conflated an initial decision with a final decision, but, in a twist of logic — also reasoned Plaintiff was not entitled to seek judicial review until 30 days after the official MSPB final decision in December 1994, pursuant to 5 U.S.C. section 7703(b). *See id.* The district court found that to allow otherwise would "lead to absurd results that def[y] the purpose of the statute, since it necessarily takes more than 120 days for the MSPB fully to process most claims before it." *Id.* According to the district court, "[w]ere a prospective plaintiff allowed to proceed in district court whenever the Board failed to meet [the 120-day] deadline, the statutory requirement of MSPB participation would be rendered meaningless." *Id.*

The D.C. Circuit disagreed, finding the district court's reasoning contravened section 7702(e)(1)(B), which explicitly permits the filing of a civil action if 120 days have passed without a "judicially reviewable action." 5 U.S.C.§ 7702(e)(1)(B). The Court also noted "the context of this statute actually supports the conclusion that Congress meant what section 7702(e)(1)(B) says"; i.e. that Congress "desir[ed] that mixed cases should be processed expeditiously, and that complainants should have access to a judicial forum should their claims languish undecided in the administrative machinery." *Butler* 164 F.3d at 640 (alterations in original adopted, other alteration added, citations and internal quotation marks omitted). The D.C. Circuit also rejected the notion

that its interpretation of the statutory scheme would lead to absurd results, noting that if a plaintiff initiates a case in district court, nothing prevents the administrative case from continuing in parallel. *See id.* at 642. Thus, while not directly analogous to the present case, *Butler* stands for the premise that the 120-day waiting period in section 7702(e)(1)(B) "merits . . . a strict reading." *Id.* at 638. The Court finds *Butler* persuasive to the extent that it holds Congress meant what is said when it authorized a plaintiff to file a civil action 120-day after filing an appeal *notwithstanding any other provision of law*, including, the regulation at issue.

      b.  *Case processing rules*

Plaintiff argues 5 C.F.R. section 1201.28 is a "case-processing" rule that cannot have jurisdictional consequences. ECF No. [21] at 15. The Court agrees.

Plaintiff cites to *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428 (2011), which considered whether a procedural rule setting a deadline to file an appeal with the Veterans Court could have jurisdictional consequences. *See id.* at 434 ("In this case . . . we must decide whether a procedural rule is 'jurisdictional.'"). Noting the sometimes "drastic" consequences of jurisdictional rules, the Court found the filing deadline was not one. *Id.* at 435 ("Filing deadlines, such as the 120-day filing deadline at issue here, are quintessential claims-processing rules."). The Court then considered whether there was any "clear indication that Congress wanted the rule to be 'jurisdictional,'" such that would effectively turn an ordinary "claims-processing" rule into a jurisdiction one. *Id.* at 436. The Court found it did not. *See id.* at 436–37.

*Henderson* is not precisely on point, as it concerns a filing *deadline* instead of a statutory *waiting period*, and missing a deadline, as opposed to filing suit prematurely is more likely to result in the "drastic" consequences noted by the Court. The holding in *Henderson* also hinges on the particular history and text of the filing rule, which, of course, do not mirror those here.

Nevertheless, at least one opinion from the Fourth Circuit — *Stewart v. Iancu*, 912 F.3d 693, 700 (4th Cir. 2019) — relied on *Henderson* in finding a statutory *waiting period* is a "claims processing" rule such that it should not impact a district court's jurisdiction.

In *Stewart*, the Fourth Circuit considered whether 42 U.S.C. section 2000e-16(c) — which facially permits an employee to file a civil action with the district court if there is no "final action" on the employee's complaint after 180 days pass from the filing of the employee's initial charge — was akin to a "claims-processing" rule. *See id.* at 699–700 (4th Cir. 2019). The plaintiff — who worked at the U.S. Patent and Trademark Office ("PTO") — filed a formal complaint with the PTO Office of Equal Employment Opportunity and Diversity on July 14, 2015, after the PTO denied one of his requested accommodations for a variety of medical conditions. *See id.* at 697. The plaintiff amended his complaint eight times, and after each amendment he was informed of his right to file a civil action once 180 days elapsed from the filing date of the administrative complaint. *See id.* "On February 29, 2016 — more than 180 days after the filing of his original administrative complaint, but less than 180 days after the filing of several of the amendments — [the plaintiff] filed . . . a civil action in the [d]istrict [c]ourt[.]" *Id.*

The PTO, like Defendant here, moved to dismiss on the basis the plaintiff failed to exhaust his administrative remedies. *See id.* at 697–98. Citing 29 C.F.R. sections 1614.106(e)(2) and 1614.108(f), the PTO argued the Plaintiff "was required to wait to file a civil action until the conclusion of the agency's investigation period. That investigation period is extended when employees amend their administrative complaint to the earlier of 180 days after the last amendment or 360 days after the filing of the initial complaint." *Id.* at 698. The district court agreed and dismissed the plaintiff's claim without prejudice for lack of subject matter jurisdiction. *See id.*

The Fourth Circuit reversed. The court first explained the procedural regime under 42 U.S.C. section 2000e-16, which permits federal employees to file a civil action based on an administrative complaint within 90 days of notice of a final agency action or after 180 days of the filing of the initial charge if there has been no action by the agency. *See* 42 U.S.C. § 2000e-16; *Stewart*, 912 F.3d at 698. The Court also explained the C.F.R. sets forth regulations that "reinforce" the statute:

> Echoing the language of 42 U.S.C. § 2000e-16(c), the EEOC's regulations also state that federal employees seeking relief under Title VII and the Rehabilitation Act may file a civil action in federal district court "after 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken. 29 C.F.R. § 1614.407(b).

*Id.* (alteration adopted).

The broad relationship between the statute — 42 U.S.C. section 2000e-16 — and its corresponding C.F.R. regulations is analogous to that in the present case. Here, 5 U.S.C. section 7702(e)(1)(b) prescribes a 120-day waiting period before an employee may file a civil action in district court, which waiting period is echoed in 5 C.F.R. section 1201.156.

The *Stewart* court proceeded to examine the purpose of the 180-day waiting period, finding it served to "facilitate out-of-court resolution" while limiting the time for the agency to address the discrimination claim. 912 F.3d at 699. The Court also looked to the legislative history of the statute, noting "Congress passed [s]ection 2000e-16(c) . . . precisely because of its recognition that federal employees frequently encounter an 'administrative quagmire' in filing charges of discrimination." *Id.* (citation omitted). "In light of this legislative context," the Court found, "180-day waiting period functions more like a mandatory, procedural hurdle for litigants than an affirmative agency step potentially giving rise to a remedy on review." *Id.* Thus, even though the statute was "cast in mandatory language [it did not] render it jurisdictional." *Id.* at 701. In the same

vein, the court found "[s]ection 2000e-16(c)'s 180-day waiting period functions more closely as a 'time prescription,' which imposes a *mandatory obligation on litigants but does not govern a court's jurisdiction*." *Id.* at 701 (emphasis added; citations omitted). In so finding, the Fourth Circuit held the district court erred in dismissing the case under Rule 12(b)(1) and should have instead considered the non-jurisdictional 180-day waiting period under Rule 12(b)(6). *See id.* at 702.

Operating within the 12(b)(6) framework, the Fourth Circuit again considered the plain language of the statute and congressional intent, finding neither contemplated 180-day waiting period would or should restart following an amendment to the initial complaint. *See id.* at 702–04. The Court also rejected the agency's position the EEOC's relevant regulations required the plaintiff to wait longer than 180 days, finding instead the regulations reinforced, instead of deviated from, the Fourth Circuit's reading of the statute. *See id.* at 705.

Applying the Fourth Circuit's reasoning here, the Court examines the plain language and the legislative history of 5 U.S.C. section 7702(e)(1)(B). The first task is complete, as the Court has already found the plain language of section 7702(e)(1)(B) contemplates an employee may file a civil action if 120 days pass from the date of his or her initial filing with no "judicially reviewable action." The statute contemplates 120-days full-stop and says nothing that contemplates an interruption or stay. *See id.*

The Court recognizes that *Stewart* court found the regulations at issue supported its strict reading of the statute. *See* 912 F.3d at 705. Here, the regulation at issue, 5 C.F.R. section 1201.28(a), does not work in harmony with 5 U.S.C. section 7702(e)(1)(B). And while the Court notes that this case suspension procedure serves to benefit the parties and the administrative judge, it cannot properly serve to toll of the 120-day period in section 7702(e)(1)(B). In the final analysis,

the plain language of the statute must control. *See Marte*, 356 F.3d at 1341. Moreover, the legislative history of section 1201.28 characterizes the regulation as one intended to "suspend *case processing.*" Practices and Procedures, 67 FR 58961-01. This language supports the inference that, like the statutes at issue in *Henderson* and *Stewart*, the regulation is a "claims-processing" rule not intended to impact the Court's jurisdiction.

\*   \*   \*

As such, the Court finds that 5 U.S.C. section 7702(e)(1)(b) facially permits Plaintiff to file an action in civil court 120-days after he files his appeal. That date is January 11, 2020, and Plaintiff filed his civil action on January 15, 2020. Thus, Plaintiff has satisfied his administrative precondition to suit.

### B.   Plaintiff's Second Amended Complaint

As noted, Plaintiff submits a proposed Second Amended Complaint along with his Motion to Amend. The Second Amended Complaint includes two counts: a Title VII claim for retaliation in violation of 42 U.S.C. 2000e-16, and a claim Defendant violated the CSRA, 5 U.S.C. section 7701(1). *See* ECF No. [22-1] at 21–22.

In response to the Motion to Amend, Defendant argues Plaintiff fails to allege sufficient facts to support his first claim and refers the Court to the arguments in Defendant's initial Motion to Dismiss Plaintiff's [First] Amended Complaint, ECF No. [8]. Regarding Plaintiff's CSRA claim, Defendant argues it is not properly before the Court because Plaintiff prematurely withdrew his Title VII claim from the MSPB action, and therefore Plaintiff has no "mixed case" available to present to the Court. *See* [ECF No. 22] at 3.

The Court finds these arguments are better suited once Plaintiff's Second Amended Complaint is affirmatively before the Court as a separate filing. Then, Defendant may present is

arguments without reference to earlier filings, and with a better understanding of the Court's jurisdiction.

## IV.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff Bernard B. Norris's Motion for Reconsideration of Order Granting Defendant's Motion to Dismiss, **ECF No. [21]**, is **GRANTED**.

2. Plaintiff's Motion for Leave to File a Second Amended Complaint, **ECF No. [22]**, is **GRANTED**.

3. Plaintiff shall refile his Second Amended Complaint, **ECF No. [22-1]**, as a separate docket entry on or before **October 19, 2020**.

4. Defendant shall have the time permitted by the Local Rules to file a response.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 15, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record